UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEMETRIUS BLAKES,

                      Plaintiff,

v.                                                  Case No. 19-cv-109-pp

GIOVONNI QUANTRELL,

                      Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51), DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 62), DENYING PLAINTIFF'S MOTION *IN LIMINE* (DKT. NO. 64), DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER EXCLUDING EVIDENCE (DKT. NO. 64) AND DISMISSING CASE**

Plaintiff Demetrius Blakes, who is confined at the Dodge Correctional Institution and is representing himself, filed a civil rights complaint alleging violations of his constitutional rights. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on an excessive force claim under the Fourteenth or Eighth Amendment[1] against the defendant, Giovonni Quantrell,[2] based on allegations that Quantrell slammed the plaintiff's head into a wall without provocation when the plaintiff was confined at the Milwaukee County Jail. Dkt. No. 13 at 5-6. The defendant has filed a motion for summary judgment. Dkt. No. 51. The plaintiff has filed a motion to amend

---

[1] At screening, it was not clear whether the Fourteenth or Eighth Amendment applied to the plaintiff's excessive force claim. The defendant has clarified that the plaintiff was pretrial detainee when the incident occurred, dkt. no. 52 at 1-2, so the Fourteenth Amendment applies.

[2] Defendant Quantrell's surname was incorrectly spelled as "Kentrell" in the complaint. The Clerk of Court has corrected the spelling of the defendant's name on the docket.

1

the complaint and a motion *in limine* and for order excluding evidence. Dkt. Nos. 62, 64. This order addresses these motions.

## I. Facts[3]

The plaintiff was incarcerated at the Milwaukee County Jail from September 12, 2018 to October 14, 2019. Dkt. No. 59 at ¶¶1-2. The defendant worked at the jail as a correctional officer when the incident described in the complaint occurred. Id. at ¶3.

On October 7, 2018, around 12:40 p.m., correctional officers working in Housing Unit 5A escorted two incarcerated individuals out of the unit for stealing other incarcerated individuals' belongings. Id. at ¶5. The officers asked the plaintiff to enter his cell because they were dealing with two individuals who had been caught stealing, and the plaintiff replied that he did not want to go into his cell because his cellmate was using the bathroom. Id. at ¶7. The plaintiff admits that he argued with the officers about entering his cell, used obscene language and was disrespectful to the officers—but he did return to his cell while the officers brought the other individuals to the "hole." Id. at ¶¶8-9.

After escorting the two individuals out of Unit 5A, the defendant—along with Officers Wilborn, Jackson, Slocum and Lieutenant Emanuele—returned to the unit to escort the plaintiff to Unit 4D, the disciplinary unit, due to his disrespectful and disruptive behavior. Id. at ¶10. The defendant walked to the plaintiff's cell door and asked him to put his shirt on and come to the door. Id. at ¶11. When the plaintiff did not immediately follow orders, the defendant asked him again to come to the cell door and place his hands outside to be

---

[3] Unless otherwise noted, the court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

secured, but the plaintiff refused to follow the orders. Id. at ¶¶12-13. The plaintiff says he knew he would be taken to the "hole" when the defendant approached his cell door and that he was mad that they were taking him there. Id. at ¶14. The officers opened the cell door and the plaintiff's cellmate exited the cell. Id. at ¶15. An officer then ordered the plaintiff to come out of the cell and he complied, but when asked to place his hands in handcuffs, he stared and began to walk toward the defendant. Id. at ¶16.

The plaintiff states that he followed the officer's orders and came out of his cell and faced the wall, but he admits he was using obscene language to the officers at the time. Id. at ¶17. The plaintiff also admits he argued with the officers as they attempted to secure him into handcuffs. Id. at ¶18.

Officer Jackson secured the plaintiff's left arm behind his back and Officer Slocum secured his right arm behind his back. Id. at ¶¶19-20. Lieutenant Emanuele then handcuffed the plaintiff's wrists and double-locked the cuffs. Id. at ¶21.

According to the defendant, in the process of being handcuffed, and while moving his head back and forth, the plaintiff quickly leaned forward, hitting his own head against the wall. Id. at ¶22. While pressed against the wall, the plaintiff struck his head against the wall a second time. Id. at ¶23. As a result of hitting his head against the wall while actively resisting the officers, the plaintiff cut the top of his eyebrow. Id. at ¶24. The defendant then secured the plaintiff's head against the wall so that he would not be able to continue to harm himself. Id. at ¶25. Once the plaintiff was secured, the defendant and Officer Jackson escorted him to Unit 4D. Id. at ¶26. According to the plaintiff, the defendant hit his head against the wall. Id. at ¶27.

After the plaintiff arrived in Unit 4D, there was a request that the nursing supervisor report to the pod to evaluate his head injury. Id. at ¶28. Nurses Marshall Kothrade and Lori McDonald evaluated the plaintiff and determined that he should be transported to Froedtert Hospital for further evaluation. Id. at ¶29. The plaintiff received six sutures while at the emergency room. Id. at ¶30.

After the incident, Lieutenant Emanuele prepared a Use of Force Report in which he characterized the force used by the defendant and other officers as "stabilization" force. Id. ¶31. As a result of the incident, the plaintiff was charged with five disciplinary offenses, including use of obscene language to staff, disobeying verbal/written orders from staff, committing an act that disrupts the orderly operation of the facility, threats to another person and committing an act that requires staff to use force. Id. at ¶32. After a disciplinary hearing, the plaintiff was found guilty of three of the charges (use of obscene language, disobeying verbal/written orders, committing a disruptive act) and received six days of discipline. Id. at ¶33. He was found not guilty of two of the charges (threats, committing an act that requires staff to use force). Dkt. No. 58-3 (Exh. C, Disciplinary Hearing & Findings).

On October 1, 2019, almost one year after the incident, the plaintiff filed a grievance in which he claimed that the defendant "hit my head on the wall and I had to go the Doctor to get some stitches." Id. at ¶¶35-36. The reviewing officer determined that the plaintiff's complaint was unfounded. Id. at ¶37.

**II. Analysis**

    A.    <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Discussion

The defendant contends the plaintiff cannot establish that the defendant used objectively unreasonable force or that the force used was not used in a good faith effort to maintain order. Dkt. No. 52 at 9. According to the defendant, the evidence shows that he used only the force that was reasonably necessary to restore order and to prevent the plaintiff from further injuring himself while he resisted officers' attempts to secure him into handcuffs. Id. The defendant also contends that he is entitled to qualified immunity. Id. at 12.

5

The plaintiff asserts that the video footage, photos and medical records support his version of the incident: that the defendant slammed his head into the wall. Dkt. No. 63 at 3-4. He also contends that the other officers failed to intervene in the defendant's conduct, and he has filed a motion to amend the complaint to add these officers to his excessive force claim. Id.; Dkt. No. 62. The plaintiff contends that the defendant has not provided him with adequate discovery and that his medical records would support his claim that the defendant used excessive force. Dkt. No. 63 at 5-6.

Because the plaintiff was a pretrial detainee at the time of the alleged events, the court reviews his claims under the Due Process Clause of the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821-22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). The Due Process Clause "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" Kingsley, 576 U.S. at 397 (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). The court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not 20/20 vision of hindsight." Id. Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably

6

perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 576 U.S. at 397. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." Id.

The defendant submitted video footage from the incident. Dkt. No. 61 (Exhibit A to Declaration of James Novotny, Video of Housing Unit 5A). The video evidence supports the defendant's description of the incident. The video shows that after the plaintiff's cellmate exited the cell, the plaintiff stood in the doorway of the cell facing forward and, as three officers approached him and surrounded him, the plaintiff threw his body to the right so his head hit the wall outside of his cell; his head bounced off the wall and an officer quickly pushed him back to the wall and pressed him against the wall; during what appears to be a brief physical struggle, officers pulled him back from the wall, then pushed him back against the wall, holding him there while restraints were placed on him; officers then escorted him away from his cell. Dkt. No. 61, 12:41:43-12:43:22.

If the only evidence presented to the court were the parties' conflicting statements, there might be a genuine dispute of material fact for a jury to decide. If a jury were to credit the plaintiff's version—that the defendant slammed his head against the wall without cause while the plaintiff was handcuffed—then perhaps a factfinder could conclude that the defendant's use of force was objectively unreasonable. See Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004) (noting that the infliction of pain is *per se* malicious if it is done "totally without penological justification"); Lewis v. Downey, 581 F.3d 467, 477-78 (7th Cir. 2009).

7

The parties' statements, however, are not the only evidence before the court. The defendant's video evidence directly contradicts the plaintiff's version of the events. The Supreme Court has held that, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 378-81 (2007). The Seventh Circuit has held that not every movement must be captured on a video for a court to find that it blatantly contradicts a particular version. See Boyd v. Pollard, 621 F. App'x 352, 355-56 (2015) (stating, "We conclude that no juror who viewed the video could reasonably conclude—given the professional behavior of the guards and minor injury sustained by Boyd—that the guards, when outside the camera's view, attacked Boyd."); see also Williams v. Brooks, 809 F.3d 936, 942 (7th Cir. 2016) (relying on video from a dashboard camera rather than the non-moving party's account to grant summary judgment because the video clearly depicted the physical confrontation in question).

While the plaintiff contends that he needs more discovery and that his medical records would help prove his claim, the undisputed facts establish that the plaintiff sustained an injury from the incident, that he was transported to the hospital for treatment and that he received six stitches. The plaintiff does not state what any additional medical records would show or allege that he received any other injuries from the incident. The video, which captures the entire physical interaction, shows *the plaintiff* throwing his head and body into the wall and the defendant subsequently holding him against the wall to restrain his movement. The video does not show the defendant slamming the plaintiff's head into the wall without provocation nor does it show any other

8

use of force against the plaintiff. The video shows a brief interaction in which the defendant and other officers gain control of the situation. Based on the video evidence, a reasonable factfinder could not conclude that the defendant used excessive force. See Scott, 550 U.S. at 378-81; see also Kingsley, 576 U.S. at 397 (court must account for the legitimate interests that stem from the government's need to manage the facility). The court will grant the defendant's motion for summary judgment.[4]

### III. Plaintiff's Motions

#### A. Motion to Amend the Complaint

On the same day the court received the plaintiff's response to the defendant's motion for summary judgment, the court received from the plaintiff a motion to amend his complaint and a proposed amended complaint. Dkt. Nos. 62, 62-1. The motion indicates that the plaintiff wants to change the name of the defendant to his correct name (Giovonni Quantrell) and that he has just been given "some freely portion of discovery documents and an auto video showing all the named defendants who used unnecessary or unreasonable excessive force" on October 7, 2018. Dtk. No. 62 at ¶¶3-4. The plaintiff says he wants to add as defendants CO Benjamin Jackson, Maurice Slocum, Randall Wilborn, Anthony Emanuele, John Does and Milwaukee County Jail. Id. at ¶5. The plaintiff says the defendants used excessive force against him, that he has just been given the legal assistance of a jailhouse helper to assist him with this case and that further discovery needs to be done. Id. at ¶¶6-8.

The defendant responds that it would be futile to grant the plaintiff's motion because the statute of limitations has run on any claim against the

---

[4] Because the court has granted the defendant's motion for summary judgment, it need not separately consider his argument that he is entitled to qualified immunity.

9

other officers. Dkt. No. 66 at 3-4. He also contends that it would be prejudicial and futile as to the merits of an excessive force claim. Id. at 4-7.

This order grants the defendant's summary judgment motion on the plaintiff's excessive force claim. Because the court has found that the defendant did not use excessive force, there can be no failure to intervene to stop or prevent the excessive use of force. See Abdullahi v. City of Madison, 423 F.3d 763, 767-68 (7th Cir. 2005). Any claim that the other officers involved in the incident failed to intervene in the alleged use of force would be futile. The court will deny the plaintiff's motion to amend.

B.  Motion *in Limine* or Motion to Exclude Evidence

The plaintiff has filed a motion *in limine* or motion to exclude evidence, in which he asks the court for an order excluding evidence related to his criminal history or prior convictions because it is irrelevant and unfairly prejudicial. Dkt. No. 64 at 1. The plaintiff states that he objects to allowing his prior convictions to be used against him during trial or during the summary judgment stage. Id. The court will deny as moot the plaintiff's motion (which the clerk's office docketed as two motions) because this order grants judgment in the defendant's favor and dismisses the case; there will be no trial.

IV. **Conclusion**

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 51.

The court **DENIES** the plaintiff's motion for leave to file amended complaint. Dkt. No. 62.

The court **DENIES AS MOOT** the plaintiff's motion *in limine*. Dkt. No. 64.

The court **DENIES AS MOOT** the plaintiff's motion for order excluding evidence. Dkt. No. 64.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of July, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

11

Case 2:19-cv-00109-PP    Filed 07/13/23    Page 11 of 11    Document 70